F I L E D
 Clerk
 District Court

MAY 06 2015

for the Northern Mariana Islands
By_____
         (Deputy Clerk)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| UNIVERSAL GROUP DEVELOPMENT INC., (SAIPAN), <br><br> Plaintiff, <br><br> v. <br><br> WANZHONG YU and FIRST HAWAIIAN BANK, <br><br> Defendants. | Case No. 1:15-CV-0002 <br><br><br> **DECISION AND ORDER GRANTING DEFENDANT WANZHONG YU's MOTION TO DISMISS** |
| FIRST HAWAIIAN BANK, <br><br> Cross-Claimant, <br><br> v. <br><br> WANZHONG YU, MINGNAN JIN and JINWEI GUO, <br><br> Cross-Defendants. | |
| WANZHONG YU, <br><br> Cross-Claimant, <br><br> v. <br><br> MINGNAN JIN and JINWEI GUO, <br><br> Cross-Defendants. | |

## I.   INTRODUCTION

This is a civil suit based on corporate law. In this case, several businessmen form a

1

corporation and manage it together. They open a bank account in the corporation's name and make themselves its authorized agents. Years pass. One of them sells his shares and leaves the corporation. But then he sends a letter to the bank asking it to freeze the corporation's account. He alleges that he was unlawfully forced out of the corporation. Months pass. Another agent visits the bank to wire funds but is rebuffed; the bank has frozen the account. The corporation sues the bank and its former agent for breach of contract and conversion, respectively. The question in this motion: has the corporation stated a claim for conversion against its former agent? The Court holds that it has not.

## II.   FACTS [1]

Plaintiff Universal Group Development, Inc. (Saipan) ("Universal") was incorporated in the Commonwealth of the Northern Mariana Islands in November 1995. (Compl. ¶ 7, ECF No. 1-2.) Defendant Wanzhong Yu was an officer and shareholder from the time of incorporation until 2007, and served as president from 1997 to 2007. (Compl. ¶ 10.) In 2007, he formally resigned as president, but continued to serve in that capacity. (Compl. ¶ 11.) Following his resignation, Yu refused to allow other officers to access Universal's corporate books, failed to pay dividends or profits to shareholders, and kept all profits for himself. (Compl. ¶¶ 12-13.)

In November 2013, while in China, Yu was arrested and charged with embezzlement and theft. (Compl. ¶ 14.) At that time, Yu again resigned as president of Universal and "transferred his shares of the company to another officer of the corporation." (Compl. ¶ 15.) Sometime after his resignation, Yu wrote a letter to Defendant First Hawaiian Bank ("FHB") asking it to freeze the account.[2] (Compl. ¶ 16.) He alleged that a corporate officer of Universal—Jinwei Guo—used

---

[1] For purposes of a motion to dismiss, the Court treats facts pleaded in the Complaint as true. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).
[2] Yu's letter to FHB was not attached to the Complaint, but was included as exhibit C to FHB's answer and crossclaim in interpleader. (Yu's Letter, FHB's Answer & Crossclaim Ex. C, ECF No. 3.) The Court may consider Yu's letter in

political connections in China to detain Yu there for 22 months. (Yu's Letter 1.) Yu asserted that Chinese officials tortured him into signing over his ownership interest in Universal to Guo without any consideration. (*Id.*) Additionally, he claimed that Guo "acquired" his interest in Universal through forged corporate documents. (*Id.*) Finally, the letter indicated that Yu would sue Guo, and accordingly asked FHB to freeze the account in the meantime. (*Id.* at 2.) FHB obliged.

Universal discovered that the account was frozen in November 2014, when Mingnan Jin,[3] its vice-president and secretary, attempted to wire money from the FHB account to Universal's parent company. (Compl. ¶ 17.) FHB refused, referring to Yu's letter. (Compl. ¶¶ 23-24.) Universal retained counsel and threatened suit, but FHB declined to unfreeze the account and referred Universal to the account agreement governing disputes. (Compl. ¶¶ 25-30.) FHB urged Universal to settle its disagreement with Yu, but warned that it would file an action in interpleader if the parties remained at odds. (FHB Letter, Compl. Ex. C.) Universal was not deterred.

In late December 2014, Universal sued Yu for conversion and FHB for breach of contract in the Commonwealth Superior Court. (Compl. ¶¶ 43-55.) The verified complaint was signed by Universal's vice-president and secretary, Mingnan Jin. (Verification, ECF No. 1-2.) At the time, Universal maintained a savings account with Defendant First Hawaiian Bank ("FHB") worth approximately $225,000.[4] FHB removed the matter to this Court in January 2015 (Notice of Removal, ECF No. 1) and, as promised, filed a crossclaim in interpleader against Yu, Jin, and Guo (FHB's Answer & Crossclaim, ECF No. 3). FHB also attached Yu's letter to the cross-complaint.

---

this motion to dismiss. *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (stating that a court may consider a document submitted outside the pleadings in a motion to dismiss if: (1) the complaint refers to the document; (2) it is central to the plaintiff's claim; and (3) no party objects to its authenticity).

[3] Mingnan Jin is alternatively spelled "Mingnam Jin" in the pleadings filed in Superior Court. (Verification, ECF No. 1-2.)

[4] The funds in Universal's account have since been deposited with this Court pursuant to FHB's interpleader. (Order to Deposit Funds, ECF No. 15.)

3

(Yu's Letter, FHB's Answer & Crossclaim Ex. C.)

On the same day that FHB filed its crossclaims in interpleader, Yu filed a motion to join Jin and Guo as indispensable parties (Yu's Rule 19 Mot., ECF No. 4), and a motion to dismiss Universal's original complaint (Yu's Mot. to Dismiss, ECF No. 5). At the March 12, 2015 hearing on Yu's motions, Yu moved to withdraw his pending motion to join Jin and Guo as moot based on FHB's interpleader. Over Universal's objection, the Court granted the motion. (Min. Entry, ECF No. 13.) The only motion pending, therefore, is Yu's motion to dismiss Universal's conversion claim against him.

### III.   SUBJECT MATTER JURISDICTION

The Court has diversity jurisdiction over this matter because the amount in controversy is approximately $225,000 and the parties are diverse: Plaintiff Universal is a CNMI corporation; Defendant FHB is a Hawaiian corporation; Defendant Yu is a Chinese citizen. *See* 28 U.S.C. §§ 1332(a) (original jurisdiction in diversity if amount in controversy exceeds $75,000 and the plaintiff's citizenship does not overlap with the defendant's), 1441(b) (removal from state court for diversity jurisdiction).

### IV.   ANALYSIS

The Complaint alleges that Yu converted the bank account in three ways.[5] First, Yu withdrew funds without authority to do so. (Compl. ¶ 51.) Second, Yu "ke[pt] all business profits

---

[5] The Complaint also purports to assert causes of action for declaratory and injunctive relief (Compl. ¶¶ 31-42), but "[d]eclaratory and injunctive relief are remedies, not causes of action." *Ajetunmobi v. Clarion Mortg. Capital, Inc.*, 595 F. App'x 680, 684 (9th Cir. 2014) (citing *Roberts v. Los Angeles Cnty. Bar Ass'n*, 129 Cal. Rptr. 2d 546, 555 (Ct. App. 2003) (noting that injunctive relief is a remedy and that declaratory relief is appropriate prospectively to "set controversies at rest before they lead to repudiation of obligations, invasion of rights[,] or commission of wrongs")). Federal courts have the power to issue declaratory judgments on "an appropriate pleading," *see* 28 U.S.C. § 2201, but there must be an independent basis for such a declaration to issue. *See Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989) (stating that the Declaratory Judgment Act "only creates a remedy and is not an independent basis for jurisdiction"). The basis for any relief against Yu is the conversion claim, and that is where the Court must focus.

of [Universal] for himself rather than distribut[ing] such monies to shareholders." (Compl. ¶ 53.) Third, Yu interfered with Universal's access to its bank account by "requesting that the account be 'frozen' even though he knew that he had no legal basis to do so." (Compl. ¶ 52.) None of the allegations state a cause of action for conversion.

To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim of relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). Courts draw reasonable inferences in a plaintiff's favor, and a "well-pleaded complaint may proceed even if it appears that recovery is very remote and unlikely," but "courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (internal quotation marks and citations omitted). The purpose of this standard is "to give fair notice and to enable the opposing party to defend itself effectively[,]" and to ensure "that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Bacca,* 652 F.3d 1202, 1216 (9th Cir. 2011).

The Commonwealth Supreme Court has never addressed conversion in the context of a bank account, but it has generally adopted the Restatement Second of Torts' definition of conversion and relied on other state courts applying the same. *See Del Rosario v. Camacho*, 6 N.M.I. 213, 232 (2001) (adopting the Restatement); Restatement (2d) of Torts § 222A(1) (stating the conversion forced sale rule: "Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel."). "Conversion is the act of willfully interfering with any chattel without lawful justification, whereby any person entitled to the chattel is deprived of the possession of it." *Mendiola v. Commonwealth Utils. Corp.*, 2005 MP 2 ¶ 19

5

(citing *Reliance Ins. Co. v. U.S. Bank of Wash., N.A.*, 143 F.3d 502, 506 (9th Cir. 1998)). Conversion applies only to things capable of being lost or stolen. *Del Rosario*, 6 N.M.I. at 232.

There are two problems with treating bank accounts as property subject to conversion. First, an account is not chattel or personal property subject to conversion, but rather an accounting of the bank's indebtedness to the depositor. Second, a depositor is not entitled to possess or control his bank account such that anyone could interfere with his rights and commit conversion—the bank is the only party entitled to control the funds.

First, a bank account is not chattel. In *Reliance Ins. Co.*, the Ninth Circuit identified the general rule that bank accounts "cannot be the subject of conversion, because they are not specific money, but only an acknowledgment by the bank of a debt to its depositor." *Reliance Ins. Co.*, 143 F.3d at 506 (stating that conversion "traditionally involves wrongful taking and carrying away of something tangible"). In other words, although specific sums of money—particularly tangible property like a wad of cash or a negotiable instrument—can be "chattel" or personal property for conversion purposes, money deposited in a bank account creates a debtor creditor relationship between the bank and the depositor, and the funds deposited constitute a loan. *Id.* (noting that "money in the bank" is a metaphor for a bank's acknowledgment of indebtedness to the depositor). Unless there is some sort of specific arrangement between the bank and depositor, such as a bailment, where the bank does not take ownership of the funds but holds them apart, an action in conversion is not generally appropriate. *See* Dan B. Dobbs et al., *The Law of Torts* § 711 (2d ed. 2014) ("One who deposits funds in a bank is a creditor, not a bailor of the funds.").

Second, a depositor does not have a possessory interest in his bank account. Applying the Restatement, "[t]he proper plaintiff in a conversion action is one who had the right to immediate possession of the chattel at the time of the alleged conversion." *Universal Mktg. & Entm't, Inc. v.*

6

*Bank One of Ariz. N.A.*, 53 P.3d 191, 193-94 (Ct. App. Ariz. 2002) (internal quotation marks omitted). Assuming for the sake of argument that deposits in a bank account could be considered chattel for conversion purposes, a depositor nevertheless cannot state a conversion claim for interference with the account because it is the bank, not the depositor, which has the immediate right of possession. *Id.* at 193.

Applying the law to Universal's three theories of liability, the Court finds that none of them states a cause of action for conversion.

### A. The Unauthorized Removal of Funds from Universal's FHB Account.

The first allegation—that Yu unlawfully removed funds from Universal's account at FHB—lacks sufficient specificity to plausibly state a claim. *See Iqbal*, 556 U.S. at 678. The pleadings do not specify any particular instances of Yu withdrawing funds from Universal's FHB account, nor a reasonable timeframe for such withdrawals. Nor do the pleadings provide even a ballpark figure for the amount of funds allegedly converted. At the hearing, counsel for Universal asserted that more specific claims could be pleaded after discovery, but as the Ninth Circuit has pointed out, the pleading rules exist in part to prevent defendants from having to undergo the expense of meritless discovery proceedings. *See Starr*, 652 F.3d at 1216. Given the paucity of facts provided in the Complaint, Universal's first theory of conversion lacks plausibility and must be dismissed. *See Iqbal*, 556 U.S. at 678.

### B. Universal's Corporate Profits.

Universal's second theory of liability—that Yu kept corporate profits for himself at the expense of the other shareholders—must also fail. As Yu points out, the pleadings do not allege any harm to Universal. (Yu's Mot. to Dismiss 3.) Universal failed to respond to this argument in its opposition brief, and the Court deems it admitted. (Universal's Opp'n, ECF No. 8.) Because

the Complaint does not allege that Yu misappropriated Universal's resources, but rather those properly belonging to its shareholders, and because Universal had no property interest in proceeds so withheld by another, the Court finds that Universal lacks standing to assert a conversion claim on that basis.

### C. Conversion by Causing the Freeze of the FHB Account.

Finally, Universal's third theory of liability—that Yu converted Universal's bank account by asking FHB to freeze it—also fails to state a claim for conversion. The approximately $225,000 in the account was not chattel property subject to a conversion claim, but rather the amount of money debtor FHB owed to creditor Universal. *See Reliance Ins. Co.*, 143 F.3d at 506. Similarly, because FHB—like borrowers generally—controls and possesses the money deposited, and Universal—like lenders generally—does not, Universal cannot state a claim for conversion based on Yu's interference with FHB's possessory interest. *See Universal Mktg. & Entm't*, 53 P.3d at 194 (stating that a depositor relinquishes his "immediate right to possession at the time of conversion" when he deposits funds in an ordinary bank account). In sum, Yu cannot be held liable for conversion of non-chattel property for which Universal had no right of immediate possession.

### V. CONCLUSION

The facts as currently alleged by Universal fail to state a conversion claim against Yu. However, the Court will grant leave for Universal to amend its complaint to allege the requisite facts for its claim. Moreover, to the extent that Yu's conduct was tortious under some other theory of liability, Universal may amend its pleadings to add such claims.

It is hereby ORDERED that:

- Defendant Yu's Motion to Dismiss (ECF No. 5) is granted;
- All claims against Yu are dismissed without prejudice; and

- Universal shall file an amended complaint no later than May 21, 2015.

SO ORDERED this 6th day of May, 2015.

　　　　　　　　　　　　　　　　　　　　／s／ Ramona V. Manglona
　　　　　　　　　　　　　　　　　　　　RAMONA V. MANGLONA
　　　　　　　　　　　　　　　　　　　　Chief Judge