F I L E D
Clerk
District Court
JUL 06 2016
for the Northern Mariana Islands
By_____
(Deputy Clerk)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN MARIANA ISLANDS**

| | |
|---|---|
| UNIVERSAL GROUP DEVELOPMENT INC., (SAIPAN),<br><br>Plaintiff,<br><br>v.<br><br>WANZHONG YU and FIRST HAWAIIAN BANK,<br><br>Defendants. | Case No. 1:15-CV-0002<br><br><br><br>**DECISION AND ORDER GRANTING PLAINTIFF UNIVERSAL GROUP DEVELOPMENT INC. (SAIPAN)'S MOTION IN SUPPORT OF JUDGMENT** |
| FIRST HAWAIIAN BANK,<br><br>Cross-Claimant,<br><br>v.<br><br>WANZHONG YU, MINGNAN JIN and JINWEI GUO,<br><br>Cross-Defendants. | |
| WANZHONG YU,<br><br>Cross-Claimant,<br><br>v.<br><br>MINGNAN JIN and JINWEI GUO,<br><br>Cross-Defendants. | |

## I.    INTRODUCTION

There are a number of ways to challenge a court decision. Ask the court to reconsider.

Appeal. Find a valid means of collateral attack in another court. But ignoring the court's decision,

1    or acting as if it were not binding, is no way to bring a challenge. It is, however, a good way to

2    invoke a court's sanction powers.

3    There are several motions currently before the Court. The first comes from Plaintiff

4    Universal Group Development Inc. (Saipan) ("Universal"), through its allegedly current counsel

5    Tiberius Mocanu, seeking an order (1) confirming the validity of the corporation's decision to fire

6    former counsel, Samuel Mok, (2) ordering Mok to surrender Universal's case file, and (3)

7    imposing attorney's fees on Mok for the expense of bringing this motion as a sanction for his

8    "frivolous attempt at delay." (Mot. for Declaratory J. 5, ECF No. 64.) The second and third motions

9    were filed by Mok, seeking extensions of time to file his brief in opposition to Universal's motion

10    for declaratory judgment. (First Mot. for Extension, ECF No. 68; Second Mot. for Extension, ECF

11    No. 69.) Finally, Mocanu filed an amended notice of appearance and motion to substitute. (ECF

12    No. 73.)

13    The Court heard oral arguments on the motion for declaratory judgment and Mok's motions

14    for extensions of time on June 30, 2016, and took the matter under advisement. (Min. Entry, ECF

15    No. 75.) Subsequently, Mocanu filed the motion to substitute. For the following reasons, the Court

16    will grant all the motions.

## II.    BACKGROUND

17

18    The Court has recounted the procedural background of this case in prior proceedings, and

19    need not dwell on it here. (*See* Decision & Order 2–4, ECF No. 16.) Briefly, Defendant First

20    Hawaiian Bank ("FHB") froze Universal's bank account sometime prior to November 2014 after

21    it received a letter from Defendant/Cross-Claimant Wanzhong Yu alleging that he was the true

22    owner and agent of Universal, rather than Cross-Defendants Jinwei Guo and Mingnan Jin. When

23    Universal discovered that its account had been frozen, the corporation, presumably through either

24

1    Guo or Jin acting as its agent, retained Mok and sued FHB for breach of contract in the

2    Commonwealth Superior Court.[1] FHB removed the case to this Court in January 2015 and

3    interpleaded Yu, Guo, and Jin, seeking a judicial declaration of which, if any, of the individuals

4    were entitled to manage and receive the funds in Universal's account. (ECF No. 3.) Similarly, Yu

5    filed a cross-complaint against Guo and Jin, alleging that he was the true owner of Universal, and

6    that Guo and Jin conspired to steal it from him by arranging for his false imprisonment in China

7    and forcing him to convey his shares to Guo under duress. (ECF No. 9.)

8           When Guo and Jin failed to respond to or defend against Yu's Cross-Complaint, Yu sought

9    an entry of default from the clerk. (ECF No. 42.) Before that entry could be made, however,

10   Universal, through Mok, filed a brief in opposition. (ECF No. 44.) At a hearing on the motion,

11   Mok made a special appearance on behalf of Jin, and argued that the entry of default was improper.

12   (Min. Entry, ECF No. 47.) The Court warned Mok about the potential conflict of interest between

13   representing the corporation, which merely sought access to its funds, and its purported agent in

14   his personal capacity, but Mok pressed on. Finding no merit in Universal's opposition or Mok's

15   representations, the Court struck the opposition and ordered the clerk to enter default. (*Id.*)

16          Yu moved for default judgment on January 14, 2016. (ECF No. 52.) The Court held a

17   hearing on February 11, 2016, and Yu presented two witnesses, including himself (Min. Entry,

18   ECF No. 57.) Mok appeared on behalf of Universal and objected to the examination of the first

19   witness, but because the default judgment hearing only concerned Yu's claims against Jin and

20   Guo—and not Universal's claims against FHB—the Court disallowed the objection and allowed

21   Mok to act as a spectator only. (*Id.*) At the conclusion of the hearing, the Court granted most of

22   Yu's motion for default judgment, pending the submission of supplemental evidence. (*Id.*) Yu

23

24   _____

     [1] Universal also sued Yu, but those claims were dismissed and Universal failed to file an amended complaint. (*See* Decision & Order, ECF No. 16.)

3

submitted the additional evidence, and the Court issued default judgment on March 21, 2016. (ECF No. 58.)

The Court's findings were unequivocal: Yu's allegations were true, and he was the majority owner of Universal's shares:

> As to ownership of shares in Universal Group Development, Inc., declaratory judgment in favor of Mr. Yu and against Jinwei Guo is **GRANTED**. Mr. Yu has presented compelling evidence proving by a preponderance of the evidence that he was wrongfully detained in China for 671 days, and that the document through which Mr. Yu was purported to have assigned his shares in Universal Group Development, Inc. (**Exhibit 2**) was executed under duress. The Court finds, therefore, that the alleged assignment of shares to Mr. Guo is void. The Court further finds that Mr. Yu was still the majority shareholder holding 440,000 shares out of a total of 800,000 shares in Universal Group Development, Inc. on November 22, 2013 and thereafter (Notice of Submission of Supplemental Evidence, ECF No. 56, **Exhibit 10**). The Court further finds that Mr. Yu did not call a meeting of the shareholders and directors on November 22, 2013, and that the minutes document purporting to show that a meeting took place on that date (**Exhibit 6**) is invalid. Accordingly, the Court finds that Jinwei Guo never acquired any shares, and is not now a shareholder, in Universal Group Development, Inc.

(Default Judgment ¶ 1.) In sum, Yu never lost his control of the corporation or his position as director and president, and all acts of Guo purportedly acting in that role were void.

Following his near-total victory, Yu went about reasserting his control over the company. (*See* Mocanu Decl., ECF No. 74.) In relevant part, the shareholders of Universal (including Yu) passed a resolution reaffirming Yu's status as a director (ECF No. 72) in May 2016, and the directors passed a resolution reaffirming Yu as president (ECF No. 71) at the same time. The shareholder resolution agreed with the default judgment that Yu "is, and always was, a Director of the Corporation." (Shareholder Resolution 1.) In his role as president, Yu fired Mok on Universal's behalf on April 21, 2016: "Please withdraw as counsel from the pending cases concerning [Universal] and provide the law offices of Stephen J. Nutting with all files concerning your previous representation. Tiberius Mocanu will be contacting you to make arrangements for the

transfer of the files." (Mocanu Decl., Ex. "Letter to Mok", ECF No. 61.)

Mok refused to withdraw or transfer Universal's files to Nutting or Mocanu, arguing that he "was actively preparing a motion to vacate on [Universal's] behalf as its interests appear to have been implicated in the underlying default judgment." (Mok Decl. ¶¶ 5–11, ECF No. 62.) Mok asserted that "[r]ealistically, plaintiff will be filing its motion to vacate by Friday May 13, 2016 due to delays beyond the control of plaintiff or this office in getting key documents translated." (Mok Decl. ¶ 9.) In a May 5, 2016 letter to Mocanu, Mok stated that he did "not recognize Mr. Yu's authority to terminate [Mok's] services as the default judgment entered against the individual officers does not automatically mean Mr. Yu is the president of my client." (Mok Decl., Ex. A.)

On May 27, 2016, two weeks after Mok promised to file a motion to vacate the Default Judgment—a motion that remains unfiled as this opinion issues—Universal filed a motion through Mocanu to remove Mok from the case and sanction him. On June 9, 2016, the due date for his opposition, Mok filed a motion for a one week extension of time based on a "convergence of deadlines including an imminent deportation that required an emergency motion." (First Mot. for Extension, ECF No. 68.) Mok failed to file a proposed order or inform the Court if Mocanu had agreed to the extension. On June 16, 2016, Mok filed a second motion for an extension of time of a couple of hours because he was having computer difficulties. (Second Mot. for Extension, ECF No. 69.) Once again, Mok failed to file a proposed order or inform the Court if Mocanu had agreed to the extension. Mok's opposition was filed in the wee hours on June 17, 2016. (ECF No. 70.) On June 30, 2016, the morning of the hearing on the motion for declaratory judgment, Mok filed a proposed order for his first motion for an extension of time.

After the hearing, Mocanu filed an amended notice of appearance to clarify his position as an associate at the Stephen J. Nutting law office and a motion to substitute. (ECF No. 73.) He also

1    filed the corporate resolutions (Shareholders, ECF No. 72; Directors, ECF No. 71), and the next

2    day filed a declaration (ECF No. 74) describing those exhibits and certifying their accuracy.[2]

3    ### III.   DISCUSSION

4    *a.  Motions for Extensions of Time*

5    Before reaching the merits of the motion for declaratory judgment, the Court must

6    determine whether to accept Mok's untimely opposition. Rule 6(b) of the Federal Rules of Civil

7    Procedure allow a court, for good cause, to grant an extension of time if the request is made before

8    the deadline passes. Fed. R. Civ. P. 6(b)(1)(A). This Court's Local Rules optimistically suppose

9    that extensions will either be sought by stipulation of the parties or by an ex parte application that

10   satisfactorily shows why a stipulation could not otherwise be obtained. *Compare* Local Rule

11   ("LR") 7.1.h.1 (stipulations extending time), *with* LR 7.1.h.3(a) ("Upon satisfactory showing why

12   the increase of time could not be obtained by stipulation or duly noticed motion, the court may

13   grant ex parte an emergency increase sufficient to enable the party to apply for further increase by

14   stipulation or duly noticed motion."). Indeed, non-stipulated motions for extensions of time must

15   contain a certificate of counsel describing the emergency or the reason for the ex parte application

16   and "how counsel for the other parties were notified and whether they have been served with the

17   motion" or the reason they were not notified and why it was not practicable. LR 7.1.h.3(b)(2).

18   Moreover, motions for an extension of time require "an order on a separate, captioned pleading

19   for the judge's signature." LR 7.1.h.1.

20   The first motion for an extension of time fails every requirement articulated above. First,

21   the motion fails to demonstrate good cause for the delay. Mok essentially seeks the extension

22   because a more important case came up and he simply found himself too busy to timely submit his

23

24   [2] Mocanu is advised that best practice is to attach exhibits to the relevant notice or declaration and file all the documents concurrently. Exhibits should also be clearly labeled.

opposition. (First Mot. 1–2.) At the hearing, he made reference to a weeping individual arriving at his office asking for help. As sympathetic as a potential client may be however, an "overextended caseload is not 'good cause shown,' unless it is the result of events unforeseen and uncontrollable by both counsel and client." *Mississippi v. Turner*, 498 U.S. 1032 (Scalia, Circuit Justice 1991) (denying an extension of time because, "[l]ike any other litigant, the State of Mississippi must choose between hiring more attorneys and taking fewer appeals"). If accepting a last-minute representation will require missing court deadlines and thereby jeopardize another client's interests, then an attorney may not ethically take on the representation. *See* ABA Model Rule 1.1 ("Competent representation requires the legal knowledge, skill, thoroughness and *preparation* reasonably necessary for the representation.") (emphasis added); *see also* L.R. 7.1.i ("The court need not consider … oppositions to motions … that do not comply with the time limits set forth in these Rules.")

The motions both fail to satisfy the Local Rules. In the motions, Mok fails to explain his failure to file a stipulation extending the deadline, or even whether he alerted Mocanu to his intention to file. *See* LR 7.1.h.3(b)(2). Neither did Mok submit proposed orders in a timely manner—the morning of the hearing certainly comes too late—in violation of LR 7.1.h.1. The Court routinely grants stipulations for extensions of time. This is a community of busy solo practitioners, and the Court is conscious of the difficulties of scheduling multiple cases without the backup of a law firm full of colleagues to call upon for help. *See* LR Preface ("If a fellow member of the Bar makes a just request for cooperation, or seeks scheduling accommodation, a lawyer will not arbitrarily or unreasonably withhold consent."). But that liberal policy could easily be abused to the detriment of all litigants if any party could simply extend a deadline upon the filing of a motion. The stipulation requirement keeps litigants honest and encourages

1  professionalism.

2       The proposed order requirement helps conserve judicial resources and promotes accuracy

3  by allowing minor orders to be issued quickly without requiring the Court to draft an order itself

4  using its best judgment to determine precisely what the parties seek. Moreover, because the Local

5  Rules set an expectation that parties will submit proposals, the absence of such a proposal can

6  create delays in issuing orders to the detriment of all litigants.

7       Although Mok failed to show good cause or comply with the Local Rules, the Court will

8  nevertheless consider the merits of his opposition brief, in keeping with the general policy in favor

9  of merits decisions over procedural ones. *See Rogers v. Watt*, 722 F.2d 456, 459 (9th Cir. 1983)

10  (citations omitted). The motions will be granted, but sanctions will also be imposed.

*b.  Motion for Declaratory Judgment*

12       Universal, through Mocanu, seeks an order essentially removing Mok from its service and

13  preventing him from stymying the corporation's efforts to conduct itself. (Mot. 2.) Mocanu's

14  argument is relatively straightforward: Yu owns the majority of Universal's shares pursuant to the

15  Court's Judgment; Universal reaffirmed Yu's role as director and president of the corporation; in

16  his leadership role, Yu terminated Mok on behalf of Universal. (Mot. 2–4.) Mok makes four

17  arguments in his opposition: (1) the Court lacks jurisdiction to grant relief under the Declaratory

18  Judgment Act, 28 U.S.C. § 2201(a); (2) Mocanu lacks standing to request relief; (3) Universal has

19  standing to challenge the Default Judgment; and (4) Yu lacks authority to fire Mok. The Court will

20  grant Universal the relief it seeks.

*1.  Jurisdiction*

22       Mok first argues that this Court lacks jurisdiction to enter declaratory judgment because

23  the Declaratory Judgment Act requires that the relief be sought in a formal pleading. *See* 28 U.S.C.

§ 2201(a) (stating that a court "may declare the rights and other legal relations of any interested party seeking such declaration" "upon the filing of an appropriate pleading"); *In re ClassicStar Mare Lease Litig.*, MDL No. 1877, 2016 WL 817139, at *1–2 (E.D. Ky. Feb. 29, 2016) (denying declaratory relief because plaintiffs did not include such a prayer in the complaint).

The problem with this argument, of course, is that Yu *did* include requests for declaratory judgment in his cross-complaint: "A declaratory judgment finding that Mr. Wanzhong Yu and others are rightfully the shareholders, directors, and officers of [Universal], and restoring control of [Universal] and its business and accounts to Mr. Yu and the rightful shareholders, directors, and officers." (Cross-Complaint Prayer for Relief ¶ 5, ECF No. 9.) Because Yu sought declaratory relief in his cross-complaint, the plain language of the Declaratory Judgment Act allows this Court to "declare the rights and other legal relations" as appropriate. 28 U.S.C. § 2201(a). Mok's argument lacks any factual foundation.

But even if Yu had not asked for a declaration of rights in the pleadings, the relief sought in the motion presently before the Court is by no means limited to the Declaratory Judgment Act— Universal seeks injunctive relief as well. (Mot. 2.) Indeed, the thrust of Universal's entire motion for relief is an order enforcing this Court's Default Judgment. As Mok stated in his letter to Mocanu, he does not respect Yu's authority to fire him. But Yu gained his authority as Universal's majority shareholder (and subsequently as a director and the company's president) directly as a result of the Default Judgment. However termed, Universal is asking the Court to force Mok to act as if the Default Judgment were valid, or to enjoin him from behaving as if it were not.

Properly construed, Universal's motion seeks relief ancillary to the judgment, which federal courts have long enjoyed. *See Riggs v. Johnson County*, 73 U.S. (6 Wall.) 166, 187 (1867) ("if the power is conferred to render the judgment or enter the decree, it also includes the power to

issue proper process to enforce such judgment or decree"); *Peacock v. Thomas*, 516 U.S. 349, 356 (1996) ("we have approved the exercise of ancillary jurisdiction over a broad range of supplementary proceedings involving third parties to assist in the protection and enforcement of federal judgments—including attachment, mandamus, garnishment, and the prejudgment avoidance of fraudulent conveyances") (citations omitted); *U.S.I. Properties Corp. v. M.D. Const. Co.*, 230 F.3d 489, 496–97 (1st Cir. 2000) (collecting cases and observing that "federal courts have jurisdiction over an ancillary action to secure or preserve the fruits and advantages of a judgment or decree rendered, whether in law or in equity") (internal quotation marks omitted). The Court has jurisdiction over Universal's motion because it has jurisdiction over the Default Judgment and the motion simply seeks to effectuate that judgment.

### 2. *Mocanu Standing*

Mok next argues that Mocanu lacks standing to request relief because Mocanu's notice of appearance "is in his own name as a solo attorney" rather than as an attorney associated with the law offices of Stephen Nutting. (Opp'n 3.) Mok complains that there is no "indication of what relationship if any Mr. Mocanu has with the Law Offices of Stephen J. Nutting as well as whether the plaintiff authorized Mr. Mocanu to act as its attorney even to the extent Mr. Yu is deemed the 'rightful president' of plaintiff." (*Id.*) The argument lacks merit. While it is true that Mocanu failed to note his association with Stephen Nutting's law firm in his notice of appearance, that procedural blunder in no way substantively impacted Mocanu's relationship with Universal or prevented him from participating in this matter as an attorney. Mok's protests that he could not be certain of Mocanu's representation are so lacking in substance that they are frivolous and subject to sanction.

The letter terminating Mok states that Universal retained the law offices of Stephen Nutting and that "Tiberius Mocanu will be contacting you to make arrangements for the transfer of

[Universal's] files." (Mocanu Decl. Ex. "Letter".) Any reasonable person would conclude that Mocanu was also retained by Universal in connection with Stephen Nutting.

Indeed, that appears to be just the conclusion that Mok reached. Before the present motion was filed, Mok apparently had no problem contacting Mocanu through Stephen Nutting's law firm. Attached to Mok's first declaration is a May 5, 2016 letter he sent to Mocanu via Stephen Nutting's email address: "I did not have [Mocanu's] email address so I am sending it to you instead." (Mok Decl. Ex. A.) Four days later however, in what can only be characterized as a clumsy ploy to memorialize a faux confusion for purposes of raising this very argument, Mok sent yet another message to Stephen Nutting:

Hi Steve,

Sorry to bother you. Please see the attached letter. Last week, my secretary told me that your secretary had called multiple times from your office on behalf of [Mocanu] regarding this case and left your firm's number as a call back number. I assumed your office was involved in this case based on the foregoing. However, I see that [Mocanu] has filed a substitution of counsel based only in his name. In an abundance of caution, I am emailing your office the attached letter. I also do not have [Mocanu's] email and I understand he works and/or uses office space at your firm.

If your firm is not involved in this case then I apologize for disturbing you.

(Mok Decl. Ex. B.) The Court notes that Mok *did* in fact have Mocanu's email address after Mocanu filed his notice of appearance, as all attorneys are required to list mailing addresses, phone numbers, and email addresses when they appear, and that information is available in CM/ECF. In sum, nothing about Mok's message to Nutting was substantively necessary.

To believe Mok's argument would be to believe that he was unsure whether Mocanu was retained even after: (1) receiving a letter from Yu, in his capacity as Universal's president, instructing Mok that the corporation hired Nutting's law firm and that Mocanu would be in touch to pick up documents; (2) receiving multiple phone calls from Nutting's secretary on behalf of

11

1    Mocanu; (3) seeing that Mocanu entered an appearance in this matter on behalf of Universal; and

2    (4) talking to Mocanu on the phone. No reasonable person could hold that Mocanu did not

3    represent Universal given those facts, and the obvious posturing flies in the face of basic standards

4    of professionalism.

5            But even if the argument were offered in good faith, it lacks legal foundation. Mok argues

6    that Mocanu lacks standing because the letter from Yu only stated that Universal retained the law

7    offices of Stephen Nutting, not Mocanu himself. If Mocanu had only filed a notice of appearance

8    listing his association with Nutting, Mok seems to argue, then Mocanu would have standing to

9    represent Universal. If that argument were accurate—and the Court notes that Mok provided not

10   one iota of caselaw to support it—then presumably no attorney notice of appearance would ever

11   provide sufficient basis for this Court or opposing counsel to consider the representation as valid.

12   For instance, the Court has seen neither the retention agreement for Mok nor Mocanu nor Nutting.

13   There is no requirement that every attorney filing a notice of appearance also take some further

14   step like filing a retention agreement to prove that he really does have the client's authorization.

15           The Court declines to adopt Mok's extraordinary suggestion, and will continue its practice

16   of presuming that its attorneys represent who they say they represent in their notices of appearance.

17   *See New Technology Advantage v. Petruzelli*, No. C07-5240 RBL, 2007 WL 1848031, at *1 (W.D.

18   Wash. June 25, 2007) (rejecting a pro se plaintiff's request for discovery as to whether defense

19   attorneys actually represented defendants because (1) there was "not a shred of evidence to suggest

20   that any of the attorneys . . . appeared fraudulently," (2) "the attorneys representing defendants

21   ha[d] all put in proper notices of appearance . . . sufficient to satisfy the court that the defendants

22   [we]re properly represented," and (3) "any disputes regarding the defendants' representation

23   would be matters to be resolved between the attorney and his or her client, and Plaintiff is not

24

12

entitled to see documents relating to such representation").

### 3.   Universal Standing

Mok next argues that Universal has standing to dispute Yu's motion for default judgment. The Court ruled at the motion hearing that it did not, but that issue simply bears no relevance to this particular proceeding. The Court entered judgment in favor of Yu, who now controls Universal. If the organization controlled by someone other than Yu wishes to somehow object to the Court's prior ruling granting default judgment, it may attempt to do so in an appropriate but separate proceeding.

### 4.   Yu's Authority

Finally, Mok attacks the default judgment on the merits. According to Mok, Universal was never owned by Yu because he never paid for his shares. Rather, Universal was owned by a Chinese company called Jilin International Economic and Technical Corporation ("JIC"), which essentially pretended that Yu was a shareholder to comply with CNMI corporate laws. In fact, Yu was merely an employee who has now usurped Universal from JIC. (Opp'n 4–8.) According to Mok, "Yu does not have the authority to terminate this office as that power resides in the JIC's Board of Directors." (Opp'n 8.) Mok admitted at the hearing that JIC's board is comprised in part of Guo and Jin, the individuals Yu won his declaratory judgment against.

As the Court acknowledged in the introduction to this decision and order, Mok cannot challenge the merits of the default judgment by ignoring or violating it and then defending himself with the argument that it was wrongly issued. *Cf. Walker v. City of Birmingham*, 388 U.S. 307, 316–17 (1967) (upholding contempt conviction for violating a likely unconstitutional injunction because defendants should have "appl[ied] to the Alabama courts to have the injunction modified or dissolved" rather than violating it and offering its constitutional invalidity as a defense); *Matter*

*of Providence Journal Co.*, 820 F.2d 1342, 1346 (1st Cir. 1986) ("As a general rule, a party may not violate an order and raise the issue of its constitutionality collaterally as a defense in the criminal contempt proceeding."). Even if Mok's allegations were true, there is a valid, unchallenged judgment explicitly contrary to his understanding of the facts. As the Court found in its default judgment, the majority owner and president of Universal is, and always was, Yu. If JIC wishes to challenge Yu's ownership, it can take all lawful steps to restore itself. But until the Court's judgment is rendered invalid, it is binding. Yu is the majority shareholder, and Mok is fired.

### c. *Amended Motion to Substitute*

Mocanu admitted at the hearing that he should have filed his notice of appearance as an associate of the Law Office of Stephen J. Nutting. To clarify the docket, the Court ordered Mocanu to file an amended notice of appearance and a motion to substitute the Law Office of Stephen J. Nutting for the Law Office of Samuel I. Mok. Having reviewed the motion (ECF No. 73), and for the reasons stated above, the Court will grant the motion.

## IV.  CONCLUSION

When the Court issued judgment that Yu was "the majority shareholder" of Universal, that decision had the effect of law. Accordingly, because it was not challenged, the Court will grant the relief Universal seeks in furtherance of the judgment.

It is hereby ORDERED that:

1. Mok's first and second motions for extensions of time (ECF Nos. 68 & 69) are granted, and the opposition brief is deemed timely filed;

2. Universal's motion for declaratory judgment (ECF No. 64) is granted:

   a. The Court finds and hereby declares that Mok was terminated as

1    Universal's attorney on April 21, 2016;

2        b.   The Court finds and hereby declares that the Law Office of Stephen J.

3             Nutting now represents Universal;

4    3.   Universal's motion to substitute counsel (ECF No. 73) is granted:

5        a.   The Law Office of Stephen J. Nutting is substituted for the Law Office

6             of Samuel I. Mok;

7        b.   Mok shall turn over Universal's case file and all related accountings no

8             later than one week after the date of this order;

9    4.   Costs and Attorney's Fees are awarded to Universal for Mok's baseless and

10            frivolous arguments:

11       a.   Universal shall file an accounting no later July 13, 2016, itemizing the

12            attorneys fees and costs expended to respond to each of Mok's

13            arguments;

14       b.   Mok shall file a response, if any, no later than July 20, 2016;

15       c.   Universal shall file a response, if any, no later than July 27, 2016;

16   5.   Mok is sanctioned in the amount of $100 for his violations of this Court's Local

17           Rules.

18   SO ORDERED this 6th day of July, 2016.

19

20   _____
     RAMONA V. MANGLONA
21   Chief Judge

22

23

24

15